Please the court. If anybody ever tells you the immigration statutes are complicated, tell them to read the ERISA or the tax code. Hopefully this is an easier case. The critics of the court should have to be on our side and have an ERISA and an immigration case back-to-back. Absolutely. Well, I appreciate the opportunity to be heard. My name is Matthew Hoppeck, pro bono counsel on behalf of the petitioner. I think of this case as a pretty easy to decide case, but it has these inchoate issues sort of permeating the record and permeating both sides' arguments that make it more complicated. I want to start with the easy and move to the more complicated. The easy part, in my opinion, is that the board didn't address exactly what Mr. Camick was asking them for in his motion to reconsider. He asked that the board consider the appeal deadline to be equitably told. If the board doesn't mention it, we think that's enough of an error that the court could send this back on a remand just for the board to say whether they agree it could be equitably told, and if so, whether they would choose to do so as a matter of discretion here. But we haven't embraced equitable tolling in this context. We do have equitable tolling. So then the question is, why didn't the board talk about it in its motion? Well, the board's brief says the board has never recognized the doctrine. I doubt if that's the case. They usually pay attention to what circuit they're in. We probably haven't said they have to apply equitable tolling either. This court hasn't said it explicitly, but the Supreme Court multiple times since Lyadov has said it might exist. Not in the immigration context, but the best example is Garcia-Mata. We're talking about inherent discretion and reviewable discretion and unreviewable discretion. This context is specific and cannot be ignored. And if the BIA says we are not going to exercise equitable tolling, we are going to keep this issue within our correspondent discretion or self-certification discretion, if they do that, then that's an issue of law. I would only push back marginally. In Lyadov, the parties didn't raise equitable tolling. The board didn't mention equitable tolling, and this court didn't either because the parties didn't brief it. They didn't ask for that. Lyadov was about whether the appeal deadline is jurisdictional. And this court, in a lengthy, I think well-reasoned opinion, goes through whether the statute mandates the appeal deadline, and the court said it doesn't, and then talks about whether the board is outside the bounds of its ability to interpret the statute of its own regulations in requiring the appeal deadline to be mandatory. But the board in Lyadov and this court in Lyadov never said it can't be equitably tolled. More importantly, though, the Supreme Court has chimed in since Lyadov. That was seven years ago. The most recent case is the Garcia-Mata case from the Supreme Court that's cited in our briefing, where the Supreme Court acknowledged that some deadlines can be equitably tolled. In Garcia-Mata, it was the motion to reopen deadline. The difference, I think this one is actually easier to toll than that one. Must it be equitable? Can be. Not that it must be, but So the agency has discretion to decide whether this is an issue that it If the agency is silent, that means it didn't do it. Or that it didn't get to that point. If the agency doesn't have to say, we have expressly decided not to do it. This court's cases say it does. In the Amondi cases Oh yeah, I know the site. Amondi says, the Vargas case says this court must, and I quote, consider all factors presented by the alien. So if he says, I want equitable tolling, and the Supreme Court says that's a thing that might exist. You know, that's not a literal, if you don't do it, we reverse every time. We say those, you know, that's obviously helpful to us if the agency does. I will say the Clifton case that we also cite says the board isn't allowed to misconstrue the request for one thing as a request for another and deny that. In theory, the court could say that's what the board did here. The problem is you have a cursory two-paragraph decision that doesn't say whether they're finding no jurisdiction to equitably toll. Or as a matter of discretion, they're just choosing not to. Well, you're probably more familiar with the Amondi case than me. Tell me what you think Amondi really says. I litigated Amondi. I thought Judge Benton had written the decision, but perhaps not. Amondi was about an argument that had been raised at the board, but hadn't been addressed at the board. It was about the availability of corroborative evidence. And this court said when the board doesn't even talk about that issue that you raised in your brief, you put them on notice, that at a minimum the board has to consider and announce. That's the quote from Amondi. It must consider the arguments raised and announce its decision in a way that this court can review. Okay, I remember that now. And that's completely different than this issue. That's an evidentiary situation where the evidentiary ruling may turn on something that wasn't articulated. Judge Lopian, the court's point is well taken, but I do think if the board is just going to ignore equitable tolling requests because it says we've already resolved this back in Leidov, I think this court should push back. Both because Leidov was seven years ago. The BIA knows, I dare say, that if it does address the issue, that puts in play whether this is unreviewable discretion. True. That's what the court says in Leidov. So what you want us to do is force them to talk about it so now you can get around our decision. No, I don't think so because the court in Leidov had no problem getting to that point. Whether they say we do or don't consider equitable tolling, the next argument is, well, this is an exercise of discretion that should be judicially reviewable under the APA. But this court is well equipped to review abuses of discretion. It does it all day long, every day. Yeah, but not if it's unfettered by principles that we can review. The BIA knows that and they're taking advantage of it with silence. Well, I think this court's cases say they can't do that. But more importantly, the Supreme Court's decision in Garcia-Mata says equitable tolling might exist. It might be a thing we can ask for. It might. If the agency said we are going to apply equitable tolling and we are going to apply the equitable tolling principles as we read them in the United States Supreme Court. Now we have a discretionary issue that's reviewable under the APA. But the board hasn't spoken since Mata to say here's how we're going to treat this issue, which cripples detained pro se immigrants who want to appeal their cases. They are frustrating you and I understand the frustration, but so are they. It also makes this court's job almost impossible because if they don't address the issue, what is there to review? Wait, it's not impossible. They are exercising unreviewable discretion, which is within their prerogative. So I appreciate the court's point. I wanted to move on because I have one more thing to make and then let my colleague make their arguments. There are real issues with the board's decision here. The easiest to point out is that the board considered the appeal to be due on February 12th. In fact, the appeal was due on February 14th because the 12th was a Saturday. The board's regulations say appeals are due the following business day, which was the following Monday the 14th. Mr. Kamek gave his notice of appeal to his jailer on the 12th after being confused by a letter he had received from ICE about when it would be due. The jailer sat on that letter for three days. They didn't mail it until the 15th, the day after it was due. Had they mailed it on time, it might have gotten there. Or if there's no mailbox rule, if the board isn't going to put one in place, the remaining what I call the inchoate issue in this case is what is ICE required to do when they receive timely papers from a detainee but then sort of slow walk it to the BIA until it's late? They have attorneys in Virginia. They could take it to the board and file it in person. There are in-person courier services they could hire. I use that service almost once a week to file things the same day at the board. Where I think Lyadov is now old enough that the court should readdress it is the petitioners in Lyadov were not detained. They had 30 full days to appeal. And this court said, affirming the board's decision, that that's reasonable. The fact that you put it in the FedEx envelope the day before it was due is not reasonable. In this case, you have a detainee, not represented by counsel, who has gotten a misleading letter from ICE, who has gotten an order from ICE not to be allowed to use the photocopying in the law library, who turns in his appeal papers two days early. And the sole reason it doesn't get there is that the jail waits three days to mail it. We would ask the court to find that on the easy issue, sending this case back to the board to just explain what it meant to do would be the easy solution. I would also invite the court to talk, if the court ends up granting the petition and remanding it to the board, to give instructions about this detaining mailbox rule. It's important because this never comes up, because folks can't hire counsel. We're not going to impose the mailbox, the inmate mailbox rule on the BIA and the agency. I will say the court That's a legislative act. Well, the court did it in Sulik. And I don't know of another Sulik, the Sulik case in our brief. I don't know of any other civil detention context where there isn't a detainee mailbox rule. And it raises real What court is that? Sulik, I think, is the case that's cited in our brief. That said, there might be a requirement of a civil detainee mailbox rule. I see that my time has expired. But it wasn't immigration? No, it was a civil case. S-U-L-I-C-K. Thank you. Thank you. Mr. George. May it please the court. Matthew George for the Attorney General. There are two petitions for review in this case. The first one is of the board's finding the first appeal untimely. I don't believe petitioner has ever challenged the actual untimeliness finding by the board and the actual fact that it was untimely. It was due on March 14th, 2016. It was filed, received by the board March 17th, three days late. There's been no challenge to that. Therefore, the court should deny that petition. Turning to the second petition, the petition for review of the motion to reconsider, the board was asked to construe and analyze an ambiguous filing. A filing that asked or didn't explicitly ask for equitable tolling. It did explicitly ask for certification. And if you look at sort of the prayer for relief or conclusion of that request in the motion, it matches up almost exactly with what the board actually considered when it analyzed certification. So you think the sentence that petitioner relies on the doctrine of equitable tolling of regulatory deadlines, I think he said that sentence twice, that phrase twice. He did, Your Honor, yes. Yeah. You don't think that's enough? He also asked for certification. No, no, no. Address the question. You don't think that's enough? No. Not in this context, no. Is there any authority of this court that says what's enough? No. This would be something that's. . . What about the Amandi case? I'm not familiar with exactly how that would apply here. I haven't read it recently to be able to speak intelligently about it. But ultimately, this is a discretionary issue, as the Supreme Court recognized in Mata, sort of construing ambiguous pleadings. This pleading talks about equitable tolling, but it then asks for certification. And the Supreme Court in Mata said that's the job of courts. I'm sure this court does it all the time with counseled and pro se pleadings, as Justice Thomas pointed out in the Mata dissent. Courts have to make sense of the things that are filed with it. This pleading, this motion for reconsideration, used the words equitable tolling, but then it explicitly asked for certification, which is something the board has the authority to do. And that's what the board did. It considered certification. Certification is also something that has no standards. It's a much broader doctrine, a much broader analysis than an equitable tolling analysis would provide. And the board's consideration of certification here looked at many, if not the exact same factors it would have looked at if it were to have applied a formal equitable tolling analysis, looking at factors beyond the litigant's ability to control extraordinary factors beyond in a due diligence type of analysis. It would be narrowed into those things. And if we look at what the board decided here, it probably wouldn't have merited equitable tolling, particularly where the board points out that Petitioner failed to show why he could not have filed a simple notice of appeal. That's all he had to do in those 30 days. He didn't have to file the 44-page brief that he ended up filing. Now, yes, there may have been some constraints on his ability to research and copy that 44-page brief, but Petitioner never says anywhere why he couldn't have filed a simple, maybe one sentence that may have been sufficient, notice of appeal on a form that already exists to file these board appeals. Sort of looking at that in an equitable tolling context, that's probably not going to fly. But looking at it in a certification context where the board is not constrained by those defined factors, that is, the more things come into play, it didn't work out in this case, therefore, he's not going to get anything. But ultimately, he asked for certification. That's what the board analyzed and gave him, and that's something that the court has held it doesn't have the ability to review. Does the BIA recognize any kind of a mailbox rule? No. As we cited in our brief, its practice manual says it does not recognize a mailbox rule, and this court has said at least twice, I believe, that it's not going to impose a rule on it. Even for someone who's entirely in control of government agents? Yes, Your Honor. Federal government agents. I didn't say that very well. Federal government agents. That's correct. And the times, at least the first time this court considered imposing a mailbox rule on the board, it was when the appeal deadline was 10 days, where the aliens in that case were complaining about only having 10 days to do it. Now, granted, yes, they weren't detained, but here we have 30 days to file a simple notice of appeal with the board. And then the board sets a briefing schedule, much like this court does when a notice of appeal is filed with this court. A litigant doesn't have to file his or her brief along with a notice of appeal to this court. It has to file, they simply file a simple notice of appeal to this court. Now, yes, there are explicit prisoner mailbox rules in the federal rules of appellate procedure for detained litigants before this court. The board has chosen not to recognize that. And this court has explicitly said it's not going to impose that rule onto the agency. Back to equitable tolling for a second. What about the Garcia-Mota case? I'm sorry, I'm not familiar with that. Is that the equitable tolling in the motion to reopen context? I think so, yes, by the Supreme Court. I'm asking because I don't know anything about it. This is an honest question. Not a trick question. Go ahead. In preparing for this argument, I tried to see what was the difference between equitable tolling in the motion to reopen context versus, say, the board appeal context, where we are here. I'm not honestly sure exactly where the equitable tolling in the motion to reopen context, which the board has recognized, the board does apply all the time, why that exists there versus it doesn't exist here. It may simply have just never come up. I do think the untimeliness is different. Well, exactly. In many contexts, it's jurisdictional. That's true. The Supreme Court has sort of weighed into some of these issues, jurisdictional deadlines versus. They try to teach us that a lot of times. Are you aware of any BIA decision where they have considered a request to a petition to get around an untimely appeal on any basis other than self-certification? I could not find, at least not a court decision on that. I didn't explicitly look. I think it was an in-bank decision of ours where we applied the APA exception to judicial review. I think it was this BIA action. If the BIA decides, okay, we're going to do it on a basis other than self-certification, then it becomes presumptively judicially reviewable. I would agree with that. Now they have binding Eighth Circuit authority saying as long as we stay within our own playpen, so to speak, we don't get reviewed. Yes, Your Honor. So it seems to me that the failure to mention this has to be taken in consideration of that. Maybe not favorably, but it's relevant. It could be. Absolutely, Your Honor. And Moda, I think, says these things can be subject to equitable tolling. And the BIA has said in a motion to reopen, yes, because that's not even quasi-jurisdictional. But for relief from an untimely appeal, no, we keep that to our – it's jurisdictional unless we say it isn't, so to speak. The Board absolutely could squarely present with that question. I'm aware of a circuit that has dealt with that aspect of it and ruled it is or isn't within the agency's prerogative. The Board appeal deadline? This distinction, the Board limiting equitable tolling to what it wants to. I haven't looked for that issue. Keeping the exception to APA review when it wants to. I haven't researched that particular issue, Your Honor. I apologize. I would like to point out, though, that – I think most of our sister circuits would view that prerogative unkindly or unfavorably. I think I have two points with regard to that. The Board certainly could, if squarely presented with that question, decide that equitable tolling would be applicable in this context. It was not presented with that square on here. And that would be reviewable like we review the motion to reopen denial? Absolutely, Your Honor. Yes. I don't think there's anything nefarious going on with the Board in that respect. Counselor, am I right that the law in this circuit is that the time limit, the 30-day deadline, is mandatory but not jurisdictional? That's correct. Thank you. I see my time is up. We ask that the Court deny the first petition and dismiss the second one for lack of jurisdiction. Thank you. I'll give you a couple minutes. One of the last things Mr. George said, which is also in their briefing, is if the issue is squarely raised, the Board could address it. We think that settles this case because it is squarely raised. He did ask for equitable tolling. At a minimum, the Board should address it. To put a bug in your ear, Judge Loken, on this question of what's the difference between a deadline for a motion to reopen or a deadline for an appeal, if anything, this should be more tollable than that because the motion to reopen deadline is statutory. It's written in the statute you have 90 days. And the Supreme Court said that is subject to equitable tolling. The appeal deadline of 30 days is in the regulations. Congress didn't mandate it. It's in the regulations. In our view, if you look back at Garcia Monta, that's a good reason. No other court has talked about this. Unfortunately, you're forging a path all on your own. But I appreciate the time to talk and the extra minute. Thank you. That's a good point. Thank you, Counsel. Another intricate Immigration and Nationality Act case. It's been well-briefed and argued. We'll take it under the light.